GLOBE INDEMNITY COMPANY, A NEW YORK CORPORATION, PLAINTIFF-RESPONDENT, v. BUTLER-NEWARK BUS LINE, INCORPORATED, A NEW JERSEY CORPORATION; BOONTON, MOUNTAIN LAKES, NEWARK BUS LINE, A NEW JERSEY CORPORATION, DEFENDANTS-APPELLANTS.

Submitted May term, 1933—Decided September 27, 1933.

For the plaintiff-respondent, *Edward R. McGlynn*.

For the defendants-appellants, *Howard Isherwood* (*Ernest L. Quackenbush,* of counsel, on the brief).

The opinion of the court was delivered by

KAYS, J. This is an appeal from a judgment entered in the Essex County Circuit Court. The case was tried before Judge Porter and a jury at the Essex Circuit. A judgment of nonsuit was entered in favor of the defendants Public Service Co-ordinated Transport and C. Easman Jacobus, which defendants are not parties in this appeal. The jury rendered a verdict in favor of the plaintiff, Globe Indemnity Company, and against the defendants, Butler-Newark Bus Line, Incorporated, and Boonton, Mountain Lakes, Newark Bus Line, Incorporated, in the sum of $10,205.19, and also in favor of the said plaintiff and against the Boonton, Mountain Lakes Bus Line, Incorporated, for the sum of $1,479.84 for which amounts judgment was entered beside the sum of $123.21 costs. From this judgment the said defendants appeal here.

The facts in the case are that each defendant operated a bus line and the stock of both companies was practically all owned by one, Jacobus, who was a defendant in the suit tried below. The suit was for unpaid premiums on certain insurance policies issued by the respondent company to the appellants. The policy on which there was alleged to be an unpaid premium of about $1,000 and for which a judgment was

obtained does not appear to be involved in this appeal. The policies which are involved in this appeal seem to be of two kinds. The first of these policies are called public liability policies and insured the appellants against recoveries by outside parties for accidents which might occur to them. The premiums on the policies of which kind were partially a flat rate which was unpaid in advance and to which was to be added from time to time or subtracted from, as the case might be, such sums of money as represented a percentage upon the gross receipts of the bus line. If these percentages amounted to more than the flat rate the difference was to be added to the premium already paid, and if the percentage amounted to less, the difference was to be refunded by the respondent insurance company. The policies contained a provision that these premiums should be ultimately ascertained by the insurance company after making an examination of the books of the bus line companies to ascertain the amount of revenues. The policies also contained a provision that this examination of the books might be made at any time by the insurance company within a year. The other policies were compensation policies and the premiums on these were to be ascertained in a similar manner but not in the identical way that the premiums on those above mentioned were ascertained. Under the last mentioned policies an audit of the amount of the compensation paid to the employes by the employer was to be ascertained and the premium was to be based on the amount so paid during the period in question. The same clause relative to the examination of the books for a period of one year was contained in these policies. After an examination of the books by the auditors of the insurance company at the end of the premium year the premiums based on such audit were paid to the insurance company. Sometime after these premiums were paid the bus lines were taken over by the Public Service Co-ordinated Transport and the policies then in effect were canceled at the request of the insured. The insurance auditor went to the office of the Public Service Co-ordinated Transport to make a final audit of the books and was then referred to a number of books in the office

which he said were more than those which had been submitted to the insurance company for audit prior to that time. The auditor thereupon examined these books and discovered, according to his testimony, that the bus lines had withheld much information about their revenue and about their payment of wages which if disclosed prior to that time would have resulted in the collection of premiums amounting to some $10,000 more than had been paid. When these facts were disclosed to the insurance company the insurance company began this suit and set up in the complaint nine counts. The ninth count, however, was afterward withdrawn and the other eight were pressed at the trial. Several of these counts were objected to for various reasons and a motion was made to strike them out and also a motion to direct a verdict for the defendant.

One of the motions was based on the theory that the plaintiff was not entitled to recover on six of the counts of the complaint because such counts were based on fraud and deceit. Another motion for nonsuit and direction of a verdict was based on the theory that under the terms of the policies the plaintiff was limited to one year after the end of the premium year to audit the books of the bus lines and that, therefore, the insurance company was barred from making an audit after more than one year had elapsed. Another argument was that if for any reason the bus lines were estopped from invoking this one year clause above mentioned that such question was not a question of law but was a question of fact to be submitted to the jury. Another argument appears to be that some of the premiums allowed were for the receipts for the carriage of newspapers and not passengers. These are the arguments which are urged here on the appeal.

The first point above mentioned made by the appellant seems to be based on the theory that the plaintiff could not insert in its complaint counts in tort for deceit and also counts on contract for moneys due and that, therefore, these counts should be stricken out. The court below refused to strike out these counts. Under the Practice act of 1912 counts for any causes of action which are connected together may be

joined in the same suit. See *Pamp. L.* 1912, *ch.* 231, *p.* 379, § 11. See, also, *Bonhard* v. *Gindin,.* 104 *N. J. L.* 599, 606. There is another rule beside that laid down in the Practice act which comes from the common law and that rule is that a declaration charging fraud and deceit does not necessarily make it a declaration in tort. This rule has been long established and recognized in this state.

The next point argued is that the plaintiff should not have been allowed to prove the result of the audits made after the one-year period had expired. The argument seems to be that no matter how fraudulent the bus line companies may have been that the insurance company should be barred after a period of one year from showing such fraud if the defendant companies had successfully concealed such fraud for a period of one year as provided in the contract. Even though the defendants might have been justified in refusing the company access to the books after a period of one year if the company by some means discovered the information disclosed it certainly cannot be said that such facts could not be proved at the trial even though access might not have been had to the books under the contract.

The next point deals with a question as to whether or not the court should have submitted to the jury for its consideration the effect of the one-year clause. This question seems to have arisen after the close of the trial when the jury returned to the court room and made inquiry of the court as to whether or not it had a right to take this clause into consideration to which the court replied, that it was a legal proposition and not a factual one and that it had nothing to do with their deliberation. While as a matter of fact the question was whether or not proof had been made which showed that there was more money due than had been paid and whether that question was properly submitted to the jury by the court. This question is not properly before us because the record discloses no exception to the instructions or rulings of the court on this point.

As to the fourth point raised it appears that counsel for the respondent concedes that there was a charge of $71.33

too much as alleged in the complaint which was the charge based on the carrying of newspapers and since this is admitted by the respondent the judgment under review should be reduced by that amount, to wit, the sum of $71.33. With this modification we are, therefore, of the opinion that the judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.